In the Matter of CHARLES GOODWIN, JR., Petitioner, against STATE TAX COMMISSION, Respondent.

Third Department, November 23, 1955.

*Charles Goodwin, Jr.*, petitioner in person.

*Jacob K. Javits, Attorney-General (Lawrence H. Wagner* and *James O. Moore, Jr.*, of counsel), for respondent.

HALPERN, J. This case presents the question of the constitutionality of the provisions of section 360 of the New York State Tax Law which allow residents to make certain deductions in computing their net income which nonresidents are not allowed to make. It is asserted that the provisions discriminate against nonresidents in violation of section 2 of article IV of the Federal Constitution which provides that " The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States ".*

The petitioner is a lawyer residing in Tenafly, New Jersey, and practicing in New York City. All his income for the year in question, 1951, was earned within the State of New York. In his income tax return, the petitioner claimed and was allowed deductions for expenses connected with the production of his income, such as bar association dues, subscriptions for legal periodicals, and entertainment and car expense. He was also allowed to deduct certain charitable contributions. There is no dispute as to these items.

In addition, the petitioner claimed the right to deduct real estate taxes on his home in Tenafly, New Jersey, interest on the mortgage on his home, medical expenses (in excess of 5% of his net income), and life insurance premiums in the amount of $150. These deductions were disallowed, upon the ground that, under subdivision 11 of section 360 of the Tax Law, a nonresident was not entitled to deductions of this type, although a resident would have been allowed to make them under subdivisions 2, 3, 15 and 16 of section 360. Subdivision 11, so far as here relevant, reads as follows: " In the case of a taxpayer other than a resident of the state the deductions allowed in this section * * * shall be allowed only if, and to the extent that, they are connected with income arising from sources within the state and taxable under this article to a nonresident taxpayer ".

The petitioner concedes that the deductions claimed were not " connected with income arising from sources within the State " and that he is not entitled to make these deductions under the terms of section 360 but he challenges the constitu-

---

* The fact that " the statute is couched in terms of residence " does not take it " outside the scope of the privileges and immunities clause, which speaks of citizens " (*Toomer* v. *Witsell*, 334 U. S. 385, 397). A statute which unjustifiably discriminates against residents of other States " has the necessary effect of including in the discrimination those who are citizens of other States " and therefore it falls within the condemnation of the privileges and immunities clause (*Travis* v. *Yale & Towne Mfg. Co.*, 252 U. S. 60, 79).

tionality of the statute on the ground that it discriminates improperly against nonresidents. If his challenge is well-founded, the entire State Income Tax Law in its present form is unenforcible as against nonresidents (*People ex rel. Stafford* v. *Travis*, 231 N. Y. 339, 348–349).

The question raised by the petitioner is not a new one. Immediately after the enactment of the New York State Income Tax Law in 1919 (L. 1919, ch. 627), the validity of the statute was challenged in *Travis* v. *Yale & Towne Mfg. Co.* (252 U. S. 60, *supra*). That case was decided by the United States Supreme Court on March 1, 1920, together with a case involving the constitutionality of the Oklahoma Income Tax Law (*Shaffer* v. *Carter*, 252 U. S. 37).

The first question presented in the two cases was the general question of whether a State had the power to tax any part of the income of the residents of other States. In the *Shaffer* case (p. 56), the Supreme Court upheld the State's power to tax nonresidents upon income earned within the State. It then passed to a consideration of the specific question of the validity of the provision of the Oklahoma Income Tax Law, similar to the provision in the New York State law, allowing '' residents to deduct from their gross income not only losses incurred within the State of Oklahoma but also those sustained outside of that State, while non-residents may deduct only those incurred within the State.'' The court held this provision to be valid: '' The difference, however, is only such as arises naturally from the extent of the jurisdiction of the State in the two classes of cases, and cannot be regarded as an unfriendly or unreasonable discrimination. As to residents it may, and does, exert its taxing power over their income from all sources, whether within or without the State, and it accords to them a corresponding privilege of deducting their losses, wherever these accrue. As to non-residents; the jurisdiction extends only to their property owned within the State and their business, trade, or profession carried on therein, and the tax is only on such income as is derived from those sources. Hence there is no obligation to accord to them a deduction by reason of losses elsewhere incurred '' (252 U. S. 57).

In the *Travis* case (the New York State income tax case), the court first considered the provision of section 360 of the Tax Law '' for deducting in the computation of net income expenses, taxes, losses, depreciation charges, etc.;'' but limiting such deductions in the case of a nonresident to such as '' are con-

nected with income arising from sources within the state '' (252 U. S. p. 73). The court held this provision to be valid, upon the basis of its decision in the *Shaffer* case: '' That there is no unconstitutional discrimination against citizens of other States in confining the deduction of expenses, losses, etc., in the case of non-resident taxpayers, to such as are connected with income arising from sources within the taxing State, likewise is settled by that decision [*Shaffer* v. *Carter*] '' (pp. 75–76).

Next, the court considered the provision of section 362 of the Tax Law as it read in 1919, dealing with exemptions. Under that section, resident taxpayers were allowed an exemption of $1,000 in the case of a single person, $2,000 in the case of a married person and $200 additional for each dependent but nonresident taxpayers were not allowed any exemption. The court held this to be unconstitutional as an unreasonable discrimination between residents and nonresidents (pp. 79–81).

Immediately after the handing down of the decision in the *Travis* case, the Legislature of New York State passed chapter 191 of the Laws of 1920, amending section 362 of the Tax Law, so as to make the exemptions applicable to residents and non-residents alike, and reimposing an income tax on the 1919 income of nonresidents under the tax law as amended. This statute was upheld in *People ex rel. Stafford* v. *Travis* (231 N. Y. 339, *supra*). The specific point upon which the New York tax statute had been held unconstitutional by the United States Supreme Court was thus cleared up and the statute, as amended, has been enforced ever since as against nonresidents, without any challenge to its constitutionality in the courts, until the filing of the petition for review in the present case.

The Attorney-General maintains that the *Travis* v. *Yale & Towne Mfg. Co.* case disposes of the very point which the petitioner seeks to raise here. He directs attention to the fact that, in the brief submitted on behalf of the appellee in the Supreme Court in that case, its counsel pointed out, as an illustration of the discriminatory nature of the New York statute, that, under section 360, a resident of New York could deduct real estate taxes upon his home while a resident of Connecticut, working in New York, would not be allowed to do so. The statement by the Supreme Court quoted above, upholding the provisions of section 360, seems to have been intended as a direct answer to this contention.

The provision with respect to the deduction of taxes in the 1919 law was substantially the same as the provision in the present law. The provision with respect to the deduction of

interest was different, and the provisions for the deduction of life insurance premiums and medical expenses came into the law later (L. 1943, ch. 245; L. 1944, ch. 333). However, the principle of the Supreme Court's decision holding that a distinction could validly be made between residents and non-residents with respect to real estate taxes is equally applicable to the other types of deductions.

The petitioner argues that the statement by the Supreme Court upholding the validity of the provision limiting deductions in the case of nonresidents was an obiter dictum since the statute was held unconstitutional as to nonresidents on other grounds.

We cannot regard the Supreme Court's statement as a mere obiter dictum, in view of the fact that the alleged invalidity of the deduction provision was squarely presented to the court as one of the grounds upon which the statute was claimed to be unconstitutional. The rejection of that ground of attack by the court is just as authoritative a part of the court's decision as its upholding of the other ground of attack, the denial of exemptions to nonresidents.

Furthermore, apart from the binding authority of the Supreme Court's decision, we believe that the statutory provision under attack here is valid and constitutional. The provision limiting deductions by nonresidents is a necessary corollary of the principle of Federal constitutional law which prohibits a State from taxing the income of nonresidents except to the extent that the income was derived from sources within the State. Under this principle, it is obviously proper, in determining the net income of a nonresident, to limit the deductions to expenses which are connected with gross income derived from sources within the taxing State, since the income derived from any other source is not subject to the State's taxing power. On the other hand, residents are subject to the State's plenary taxing power, and they may be required to pay a tax on all their income, regardless of the location of its source. The State may therefore appropriately allow them deductions which are not connected with income-producing activities within the State but such deductions are automatically excluded from the deductions allowed to nonresidents by the principle which limits both their taxable income and their deductible expenses to those connected with sources within the taxing State.

No question is, or can be, raised concerning the validity of the disallowance of deductions which are connected with non-residents' income-producing activities in other States. Since

the income is not taxable in this State, obviously the related expenses are not allowable as deductions in this State. However, the problem is complicated by the fact that, in addition to the allowance of deductions for business expenses, the Income Tax Law allows the deduction of such items as taxes and interest, regardless of whether they were incurred in any income-producing activity. To the extent to which the taxpayer is allowed to deduct such items in spite of the fact that they were incurred in personal or non-income-producing activities, the allowance really constitutes an exception to the general principle that personal living expenses are not allowed as deductions for income tax purposes. This aspect of the tax law goes back to the early days of income tax legislation.* Beginning with the 1894 Income Tax Law,** the Federal Government allowed deductions for all real estate taxes, including not only taxes on business property but also taxes upon the taxpayer's personal residence and other property not held for the production of income (28 U. S. Stat. 509, ch. 349, § 28). Similarly, a deduction was allowed for all interest paid, including not only interest incurred as a business expense in connection with the carrying on of income-producing activity but also interest upon personal obligations (see, also, 1913 Income Tax Law, 38 U. S. Stat. 167, ch. 16, § 2).

These deductions undoubtedly had their genesis in governmental policy but it is difficult to ascertain now the precise policy which led to the establishment of each of the deductions. Insofar as the items of taxes and interest relate to residential property owned by the taxpayer, the allowance of the deductions may be said to express a governmental policy in favor of home ownership. This may not have been the motive of the original enactment but the allowance of the deductions has unquestionably had the effect of encouraging taxpayers to purchase their own homes instead of renting from others.

There are other instances of long standing of the allowance of deductions unrelated to income-producing activities. For example, the Federal Income Tax Law, from the beginning, allowed a deduction for the loss of property " arising from fires,

---

* See Seligman on The Income Tax (1914), for an extensive survey of the history of the income tax legislation of various countries. Items of the type here in controversy have long been allowed as deductions in many countries despite the fact that they are personal in character. For example, life insurance premiums were deductible in England as far back as 1806.

** This statute was held unconstitutional on grounds not relevant here in *Pollock* v. *Farmers' Loan & Trust Co.* (157 U. S. 429).

storms or shipwreck, and not compensated for by insurance or otherwise,'' even though the property had not been used in any income-producing activity (28 U. S. Stat. 508, ch. 349, § 28). This provision was undoubtedly designed to extend governmental aid to the taxpayer to help him bear a catastrophic loss.

The New York State Income Tax Law of 1919 (ch. 627) was patterned after the Federal law. The provisions for the deduction of taxes, interest and uninsured casualty losses were substantially the same as those of the Federal Income Tax Law. In recent years New York State has added an allowance of a deduction for life insurance premiums up to $150 and for medical expenses in excess of 5% of the taxpayer's net income, not to exceed $1,500. These deductions also represent a State policy, in the one case to encourage its citizens to obtain life insurance protection and in the other to help its citizens bear the burden of an extraordinary illness or accident.

The constitutional issue in this case arises from the fact that New York State allows deductions of this character by its residents but does not allow such deductions by nonresidents.* The question presented is whether the factor of residence has a legitimate connection with the allowance of these deductions so that a classification upon the basis of residence is justifiable. Not every distinction or discrimination between residents and nonresidents for the purpose of taxation is unconstitutional (*Travellers' Ins. Co.* v. *Connecticut,* 185 U. S. 364; *Shaffer* v. *Carter, supra; General Amer. Tank Car Corp.* v. *Day,* 270 U. S. 367; *Toomer* v. *Witsell,* 334 U. S. 385, *supra*; but see *Smith* v. *Loughman,* 245 N. Y. 486, 491, certiorari denied 275 U. S. 560).

'' Like many other constitutional provisions, the privileges and immunities clause [art. IV, § 2] is not an absolute. It does

---

* In this respect, too, the New York statute was patterned after the Federal statute. Under the Revenue Act of 1918 (40 U. S. Stat. 1067, ch. 18, § 214), nonresident aliens were taxed only on income arising within the United States. Except for a provision for apportioning interest, the statute allowed nonresident aliens to take the deductions allowed to residents only to the extent to which the deductions were connected with income arising within the United States. Similar provisions are contained in the current Federal Income Tax Law (U. S. Code, tit. 26, § 873, subd. [a]; § 213, subd. [a]). While the privileges and immunities clause does not apply to nonresident aliens, the fact that these provisions were in the antecedent Federal law casts some light upon the reasonableness of the State's adoption of similar provisions in its Income Tax Law. It may also be of interest to note that the exemption allowed under the Federal Income Tax Law to a nonresident alien is only $600, regardless of his marital or dependency status, except in the case of residents of Canada and Mexico (U. S. Code, tit. 26, § 873, subd. [d]; § 214).

bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States. But it does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it. Thus the inquiry in each case must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relationship to them.'' (*Toomer* v. *Witsell,* 334 U. S. 385, 396, *supra.*)

The question in this case is whether the distinction between residents and nonresidents is a reasonable one, based upon '' valid independent reasons ''. Where residence is a proper basis of classification, the adoption of such a basis is not violative of the Constitution.

The factor of residence has an obvious connection with the allowance of the deductions of a personal character which are under consideration here. The expenditures are properly associated with the place where the taxpayer resides. They all relate to the personal activities of the taxpayer and his personal activities must be deemed to take place in the State of his residence, the State in which his life is centered.

The expenditures in controversy in this case are clearly a part of the petitioner's personal activities in his home State. The taxes on the petitioner's residence and the interest on the mortgage on his residence are obviously connected with his life in the State of New Jersey. Similarly, the expenditures for life insurance premiums and for medical treatment were made by him in the course of his personal activities, which must be regarded as having taken place in the State of New Jersey, the State of his residence.

If these expenditures are to be allowed as deductions at all, they should be allowed by the State of the taxpayer's residence. Thus, in this case, if there were an Income Tax Law in New Jersey, it might well be expected that New Jersey would allow deductions for residence taxes, mortgage interest and similar expenditures made by its residents. It happens that New Jersey has no Income Tax Law but this does not warrant the petitioner's shifting the allowance for these expenditures, which are intimately connected with the State of his residence, to New York State.*

---

* It may be noted that if New Jersey had an Income Tax Law containing reciprocal provisions, the petitioner would be entitled to a credit against the New York State tax on his New York income for any tax which he had paid on that income in New Jersey (Tax Law, § 363).

Furthermore, as we have seen, each of the deductions embodies a governmental policy designed to serve a legitimate social end. The governmental policies are peculiarly related to the factor of residence within the State. The State may therefore constitutionally limit the availability of the deductions to residents of the State. In the exercise of its general governmental power to advance the welfare of its residents, the State may give aid or encouragement of the character embodied in the tax deductions to its own residents, without being constitutionally required to extend similar aid or encouragement to the residents of other States.

The petitioner's principal argument is that, by analogy to the decision of the Supreme Court in the case of *Travis* v. *Yale & Towne Mfg. Co.* (252 U. S. 60, *supra*), holding the distinction between residents and nonresidents with respect to exemptions to be invalid, the distinction as to deductions must also be held invalid. The analogy does not seem to us to be a sound one. Exemptions are allowed as a flat amount, without regard to the making of expenditures of any kind by the taxpayer. A flat exemption, in connection with a graduated income tax, has a direct effect upon the rate of taxation. It excludes a part of the taxpayer's income from the tax base and it lowers the tax bracket into which his remaining income falls. Obviously, it would be unconstitutional for New York State arbitrarily to tax the New York income of a nonresident at a higher rate than that applied to the income of residents. That is the substance of the holding of the *Travis* case. Upon the same principle, the Court of Appeals has held unconstitutional a transfer tax statute which taxed the New York portion of the estates of nonresidents at a different rate from that applied to the estates of residents (*Smith* v. *Loughman*, 245 N. Y. 486, certiorari denied 275 U. S. 560, *supra*).

The deductions here in question are based upon an entirely different principle. As we have seen, for a variety of policy reasons, the State has allowed deductions for certain kinds of expenditures connected with the personal activities of the taxpayer. These activities must be deemed to have taken place in the State of his residence. The fact of the residence of the taxpayer within the State is thus a legitimate reason for allowing him to make these special deductions. There was no showing in the *Travis* case of a similar justification with respect to the provision limiting the flat exemption to residents only.

The deductions in controversy here are not allowances in a flat amount for all residents, which might be regarded as the equivalent of exemptions or exclusions from income within the meaning of the *Travis* case.* They are allowed only upon a case by case basis, on account of an actual expenditure by the particular taxpayer.

Finally, it should be recalled that the United States Supreme Court itself did not see any inconsistency in the *Travis* case between its upholding of the provision denying certain deductions to nonresidents and its invalidation of the provision denying exemptions to nonresidents.

It should be borne in mind that, at the time of the decision of the *Travis* case, State income tax laws were comparatively new. It may well be that, if the question were reconsidered today in the light of the subsequent extension of State income tax laws and if all the considerations here canvassed were brought before the Supreme Court, a different decision might be reached as to the validity of the distinction between residents and nonresidents with respect to the allowance of personal exemptions. But there is no need to speculate about that possibility. New York State has accepted the Supreme Court's decision with respect to exemptions and has, in fact, gone further than the decision required. The amended New York statute allows the full exemption to nonresidents, regardless of how small a part of the nonresident's income may have been derived from New York sources. All that we need determine here is that we are not compelled, by any extension by analogy of the Supreme Court's decision as to exemptions, to invalidate the very provisions of the New York law with respect to deductions which the Supreme Court concurrently upheld.

The determination of the State Tax Commission should be confirmed, without costs.

FOSTER, P. J., BERGAN, COON and ZELLER, JJ., concur.

Determination confirmed, without costs.

---

* It is to be noted that a nonresident has the same privilege as a resident to take a flat optional deduction of 10% of his gross reportable income, or $500, whichever is less, in lieu of all the specific deductions otherwise allowable (Tax Law, § 360, subd. 18; Regulations of the Department of Taxation and Finance, § 431-a, adopted Oct. 22, 1947 [N. Y. Official Compilation of Codes, Rules & Regulations, 4th Supp., p. 1013]). The petitioner in this case did not claim the optional deduction because he had permissible deductions of over $500, which were allowed without controversy.