*285
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 In this combined action for a declaratory judgment and CPLR article 78 relief petitioners challenge the constitutionality of Tax Law § 631 (b) (6), which disallows nonresidents a full deduction for alimony payments from their New York State income tax liability. The central question before us is whether Tax Law § 631 (b) (6) violates the Privileges and Immunities Clause of the United States Constitution. We conclude the statute is constitutional.
 

 Petitioners Christopher H. Lunding and his wife Barbara J. Lunding are Connecticut residents. In 1990, Mr. Lunding, a partner in a New York City law firm, derived substantial income from the practice of law in this State. On their joint New York nonresident tax return filed for the year 1990, they reported a Federal adjusted gross income of $788,210, which included an adjustment of $108,000 for the full amount of alimony that Mr. Lunding had paid that year to his former spouse, also a Connecticut resident. On their return petitioners adjusted their New York State gross income by 48.0868% of the alimony payments — equaling $51,934 — which represented the percentage of Mr. Lunding’s 1990 claimed New York business income.
 

 Relying on Tax Law § 631 (b) (6) the Audit Division of the Department of Taxation and Finance denied the alimony deduction and recalculated petitioners’ New York tax liability, concluding that they owed an additional $3,724. A Notice of Deficiency in that amount followed.
 

 Petitioners then filed an administrative petition with the Division of Tax Appeals challenging the Notice of Deficiency on the ground that Tax Law § 631 (b) (6) was unconstitutional. Specifically, petitioners claimed that the tax which was the subject of the Notice of Deficiency cannot be collected because the statute and the Department’s actions discriminate illegally against nonresidents in violation of the Privileges and Immunities, Equal Protection and Commerce Clauses of the United States Constitution.
 

 The Administrative Law Judge sustained the disallowance, holding that the Tax Appeals Tribunal lacked authority to de
 
 *286
 
 clare the statute unconstitutional. In their exception petitioners conceded that the Tribunal’s jurisdiction did not encompass their constitutional challenge but asserted that principles of collateral estoppel and stare decisis applied, relying on the Third Department’s ruling in
 
 Matter of Friedsam v State Tax Commn.
 
 (98 AD2d 26,
 
 affd
 
 64 NY2d 76). The Tribunal affirmed the decision of the ALJ, agreeing that
 
 Friedsam
 
 was not dis-positive.
 

 Thereafter, petitioners commenced an article 78 proceeding. The Appellate Division converted the constitutional challenge into a declaratory judgment action and retained as an article 78 proceeding the remaining portion seeking annulment of the Tribunal’s decision. While recognizing both that this Court had affirmed
 
 Friedsam
 
 solely on statutory grounds and that the statutory provisions in the two cases are different, the Appellate Division declared the statute violative of the Privileges and Immunities Clause. Respondent Commissioner appealed as of right (CPLR 5601 [b] [1]). We now reverse.
 

 Statutory Scheme
 

 Tax Law § 631 (b) (6), enacted as part of the Tax Reform and Reduction Act of 1987 (L 1987, ch 28) (TRARA), specifies that
 

 "[t]he deduction allowed by section two hundred fifteen of the internal revenue code, relating to alimony, shall not constitute a deduction derived from New York sources.”
 

 New York source income of a nonresident is defined under Tax Law § 631 as:
 

 "(a) * * * the sum of the net amount of items of income, gain, loss and deduction entering into his federal adjusted gross income, as defined in the laws of the United States for the taxable year, derived from or connected with New York sources, including:
 

 "(1) his distributive share of partnership income, gain, loss and deduction * * *
 

 "(k) * * *
 

 "(1) Items of income, gain, loss and deduction derived from or connected with New York sources shall be those items attributable to * * *
 

 "(B) a business, trade, profession or occupation carried on in this state”.
 

 
 *287
 
 Beginning with the 1988 taxable year nonresidents’ income • from all sources is used in calculating their rate of New York tax. As we explained in
 
 Brady v State of New York
 
 (80 NY2d 596, 600,
 
 cert denied
 
 509 US 905), under Tax Law § 601 (e) (1) the tax of a nonresident is first calculated "as if [the taxpayer] were a resident,” and the sum is then reduced by the percentage of income earned in New York compared to total income. While residents and nonresidents with the same total income are taxed at the same rate, the nonresident thus is taxed only on the percentage of income attributable to New York.
 

 Consequently, Tax Law § 601 (e) (1) provides:
 

 "There is hereby imposed for each taxable year on the taxable income which is derived from sources in this state of every nonresident * * * a tax which shall be equal to the tax computed under subsections (a) through (d) of this section * * * as if such nonresident * * * were a resident, multiplied by a fraction, the numerator of which is such individual’s * * * New York source income determined in accordance with part III of this article [ 631] and the denominator of which is such individual's * * * federal adjusted gross income for the taxable year.”
 

 The hypothetical "as if a resident” tax liability includes all deductions available to a resident, including a deduction for alimony payments. However, the numerator of the fraction (referred to as the "apportionment percentage”) — the nonresident’s New York source income — is not reduced by any non-business deductions (including alimony payments). The denominator — the nonresident’s Federal adjusted gross income — has under the Internal Revenue Code been reduced by any alimony payments (26 USC § 215).
 

 Petitioners urge that Tax Law § 631 (b) (6) is discriminatory because, without justification, it denies nonresidents the benefit of an alimony deduction from New York State tax liability. The Appellate Division agreed that the Privileges and Immunities Clause was violated. We answer the question differently.
 

 Analysis
 

 We begin with the familiar proposition that statutes — the enactments of a coequal branch of government — enjoy a presumption of constitutionality. Moreover, "in taxation, even more than in other fields, legislatures possess the greatest freedom in classification.”
 
 (Austin v New Hampshire,
 
 420 US
 
 *288
 
 656, 661-662 [citing
 
 Madden v Kentucky,
 
 309 US 83, 88;
 
 Lehnhausen v Lake Shore Auto Parts Co.,
 
 410 US 356].)
 

 The Privileges and Immunities Clause (US Const, art IV, § 2), entitling the "Citizens of each State * * * to all Privileges and Immunities of Citizens in the several States,” was intended to create a national economic union and establish a norm of comity between States. The Clause in essence ensures that citizens of State A may do business in State B on terms of substantial equality with the citizens of that State.
 
 (See, Supreme Ct. of N. H. v Piper,
 
 470 US 274, 279-280;
 
 Toomer v Witsell,
 
 334 US 385, 396.)
 

 In two seminal decisions on State income taxation of nonresidents under the Privileges and Immunities Clause—
 
 Shaffer v Carter
 
 (252 US 37) and
 
 Travis v Yale & Towne Mfg. Co.
 
 (252 US 60) — the Supreme Court established that limiting taxation of nonresidents to their in-State income was a sufficient justification for similarly limiting their deductions to expenses derived from sources producing that in-State income. Further, the Court made clear that in testing the constitutionality of a tax law, a court should put aside "theoretical distinctions” and look to "the practical effect and operation” of the scheme
 
 (Shaffer v Carter,
 
 252 US at 56).
 

 Thus, in
 
 Shaffer
 
 the Court upheld a provision of the Oklahoma income tax law that taxed nonresidents’ income derived from local property and business and limited their deductions to losses related to these in-State activities, where Oklahoma also taxed all income of its own citizens. Similarly in
 
 Travis,
 
 the Court considered a New York statutory provision limiting a nonresident’s income tax deductions to such as "are connected with income arising from sources within the state”
 
 (Travis,
 
 252 US at 73). In upholding the provision the Court noted that
 

 "there is no unconstitutional discrimination against citizens of other States in confining the deduction of expenses, losses, etc., in the case of non-resident taxpayers, to such as are connected with income arising from sources within the taxing State, likewise is settled by
 
 [Shaffer].” (Id.
 
 at 75-76.)
 

 The
 
 Travis
 
 Court, however, considered an additional provision of the Tax Law that disallowed nonresidents any personal exemptions and found this an unreasonable discrimination because New York’s proffered hope of reciprocity did not justify the statute’s discriminatory effect
 
 (id.
 
 at 81-82).
 

 
 *289
 
 More recently, the Supreme Court in
 
 Austin v New Hampshire
 
 (420 US 656) invalidated New Hampshire’s commuters’ income tax where it determined that "the tax falls exclusively on the income of nonresidents; and it is not offset even approximately by other taxes imposed upon residents alone”
 
 (id.
 
 at 665). Indeed, the practical effect of the tax scheme in
 
 Austin
 
 was that New Hampshire taxed only the income of nonresidents working in the State, whereas its own residents paid no income tax whatever
 
 (but see, Spencer v South Carolina Tax Commn.,
 
 281 SC 492, 316 SE2d 386,
 
 affd by an equally divided ct
 
 471 US 82 [reciprocity between States insufficient justification for disallowance of alimony deduction]).
 

 As these cases illustrate, the Privileges and Immunities Clause does not mandate absolute equality in tax treatment. Rather, disparity in tax treatment between residents and nonresidents is permissible "in the many situations where there are perfectly valid independent reasons for it”
 
 (Toomer v Witsell,
 
 334 US at 396). Therefore, the Clause is not violated where "(i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State’s objective.”
 
 (Supreme Ct. of N. H. v Piper,
 
 470 US at 284.)
 

 In this State, the propriety of disallowing deductions to nonresidents for personal expenses unrelated to New York income-producing sources was definitively addressed in
 
 Matter of Goodwin v State Tax Commn.
 
 (286 App Div 694,
 
 affd
 
 1 NY2d 680,
 
 appeal dismissed
 
 352 US 805). There, the petitioner, a lawyer residing in New Jersey and practicing in New York City, challenged New York’s disallowance of deductions he claimed for his New Jersey real estate taxes, interest payments, medical expenses and life insurance premiums. In upholding the challenged disallowance, the Appellate Division gave three independently sufficient reasons to support the statute, two of which are particularly instructive here.
 

 First, New York residents — unlike nonresidents — were subject to the burden of taxation on their worldwide income regardless of source and therefore were entitled to the offsetting benefit of full deductions (286 App Div at 696-698). Second, the court found it reasonable to disallow the deductions because they were personal expenses of the taxpayer and therefore "clearly a part of the petitioner’s personal activities in his home State * * * If these expenditures are to be allowed as deductions at all, they should be allowed by the State of the taxpayer’s residence”
 
 {id.
 
 at 701). Lastly,
 
 Goodwin
 
 justified the
 
 *290
 
 disparity on the basis that deductions for certain personal expenses reflected acceptable State policy to "give aid or encouragement of the character embodied in the tax deductions to its own residents” where the policies were linked to residence, and in such instances the State was not "constitutionally required to extend similar aid or encouragement to the residents of other States.”
 
 {Id.
 
 at 702.)
 

 After
 
 Goodwin,
 
 the Appellate Division in
 
 Matter of Golden v Tully
 
 (88 AD2d 1058) considered a privileges and immunities challenge to New York’s policy of granting a moving expenses deduction to residents while denying it to nonresidents. Finding no justification for the disparate treatment the court, over the dissent of then-Justice Levine, struck down the statute. This Court affirmed the Appellate Division order but solely on the narrow ground that the Tax Commission in its answer and bill of particulars had offered only nonresidence as the explanation for the disallowance (58 NY2d 1047, 1049). Manifestly,
 
 Golden’s
 
 limited holding does not control the present case.
 

 Nor does our affirmance in
 
 Friedsam
 
 undercut
 
 Goodwin’s
 
 applicability here. In
 
 Friedsam,
 
 under facts similar to the present case, a Connecticut resident challenged New York’s policy of disallowing alimony deductions from a nonresident’s New York adjusted gross income. The Appellate Division, again over the dissent of then-Justice Levine, upheld the challenge concluding that there was no social policy justification for the disparate treatment. We affirmed, but only on statutory grounds. Pointing to Tax Law former § 635 (c) (1) — which provided that "[t]he New York itemized deduction of a nonresident individual shall * * * be the same as for a resident individual” — we concluded the alimony disallowance was "contrary to statute and tax policy of this State.”
 
 (Friedsam,
 
 64 NY2d at 81-82.) As petitioner concedes, Tax Law § 631 (b) (6), enacted some three years after
 
 Friedsam,
 
 had the effect of removing this impairment.
 

 Now applying well-established principles to the facts before us, we conclude there is no violation of the Privileges and Immunities Clause. The disparate tax treatment of alimony paid by a nonresident is fully justified in light of the disparate treatment of income: nonresidents are taxed only on income earned in New York, while residents are taxed on all income earned from whatever sources. Focusing on the practical effect and operation of the challenged tax it is clear that the advantage granted residents is offset by the additional burden of being taxed on all sources of income. Indeed, unlike
 
 *291
 

 Travis
 
 and
 
 Shaffer,
 
 nonresidents are not denied all benefit of the alimony deduction since they can claim the full amount of such payments in computing the hypothetical tax liability "as if a resident” under Tax Law § 601 (e).
 

 Furthermore, the disallowance is substantially justified by the fact that petitioners’ alimony payments are — not unlike the expenditures for life insurance, out-of-State property taxes and medical treatment at issue in
 
 Goodwin
 
 — wholly linked to personal activities outside the State. There is nothing to "warrant the petitioner’s shifting the allowance for these expenditures, which are intimately connected with the State of his residence, to New York State.”
 
 (Goodwin,
 
 286 App Div at 701.) Indeed, there can be no serious argument that petitioners’ alimony deductions are legitimate business expenses. Thus, the approximate equality of tax treatment required by the Constitution is satisfied, and greater fine-tuning in this tax scheme is not constitutionally mandated.
 

 Moreover, petitioners’ argument that the silence of TRARA’s legislative history as to the substantial reasons behind the treatment of nonresidents’ alimony deductions somehow preordains its unconstitutionality is without merit. Where, as here, substantial reasons for the disparity in tax treatment are apparent on the face of the statutory scheme, absence of a statement at the time of enactment will not invalidate the statute.
 

 Petitioners fare no better under the Equal Protection and Commerce Clauses. Nothing in the Fourteenth Amendment prevents the States from imposing unequal taxation on nonresidents, so long as the inequality is rationally related to the furtherance of a legitimate State interest
 
 (see, Shaffer,
 
 252 US at 58;
 
 Western & S. Life Ins. Co. v Board of Equalization,
 
 451 US 648, 667-668). Here, New York’s treatment of alimony deductions is rationally related to its substantial policy of taxing only those gains realized and losses incurred by a nonresident in New York, while taxing residents on all income from whatever sources. Further, the challenged treatment is rationally related to its policy of limiting a nonresident’s deductions to those attributable to income-producing activities in New York. Even if this matter concerning alimony payments were deemed to involve interstate commerce, petitioners’ Commerce Clause claim would ultimately fail for the same reason.
 

 Accordingly, the judgment of the Appellate Division should be reversed, with costs, the petition dismissed and judgment granted declaring Tax Law § 631 (b) (6) constitutional.
 

 
 *292
 
 Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Judgment reversed, etc.