LUNDING ET UX. *v.* NEW YORK TAX APPEALS
TRIBUNAL ET AL.

No. 96–1462.   Argued November 5, 1997—Decided January 21, 1998

288

O'CONNOR, J., delivered the opinion of the Court, in which STEVENS, SCALIA, SOUTER, THOMAS, and BREYER, JJ., joined. GINSBURG, J., filed a dissenting opinion, in which REHNQUIST, C. J., and KENNEDY, J., joined, post, p. 315.

*Christopher H. Lunding, pro se*, argued the cause for petitioners. With him on the briefs was *John E. Smith*.

*Andrew D. Bing*, Assistant Attorney General of New York, argued the cause for respondents. With him on the brief for respondent Commissioner of Taxation and Finance were *Dennis C. Vacco*, Attorney General, *Barbara G. Billet*, Solicitor General, and *Peter H. Schiff*, Deputy Solicitor General.*

JUSTICE O'CONNOR delivered the opinion of the Court.

The Privileges and Immunities Clause, U. S. Const., Art. IV, § 2, provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." In this case, we consider whether a provision of New York law that effectively denies only nonresident taxpayers an income tax deduction for alimony paid is consistent with that constitutional command. We conclude that because New York has not adequately justified the discrimi-

---

*A brief of *amici curiae* urging affirmance was filed for the State of Ohio et al. by *Betty D. Montgomery*, Attorney General of Ohio, *Jeffrey S. Sutton*, State Solicitor, and *Robert C. Maier* and *Barton A. Hubbard*, Assistant Attorneys General, and by the Attorneys General for their respective States as follows: *Winston Bryant* of Arkansas, *Daniel E. Lungren* of California, *Margery E. Bronster* of Hawaii, *Alan G. Lance* of Idaho, *James E. Ryan* of Illinois, *Jeremiah W. (Jay) Nixon* of Missouri, *Joseph P. Mazurek* of Montana, *Michael F. Easley* of North Carolina, *Jan Graham* of Utah, *William H. Sorrell* of Vermont, *Darrell V. McGraw* of West Virginia, and *James E. Doyle* of Wisconsin.

natory treatment of nonresidents effected by N. Y. Tax Law § 631(b)(6), the challenged provision violates the Privileges and Immunities Clause.

I

A

New York law requires nonresident individuals to pay tax on net income from New York real property or tangible personalty and net income from employment or business, trade, or professional operations in New York. See N. Y. Tax Law §§ 631(a), (b) (McKinney 1987). Under provisions enacted by the New York Legislature in 1987, the tax on such income is determined according to a method that takes into consideration the relationship between a nonresident taxpayer's New York source income and the taxpayer's total income, as reported to the Federal Government. § 601(e)(1).

Computation of the income tax nonresidents owe New York involves several steps. First, nonresidents must compute their tax liability "as if" they resided in New York. *Ibid.* The starting point for this computation is federal adjusted gross income, which, in accordance with the Internal Revenue Code, 26 U. S. C. § 215, includes a deduction for alimony payments. After various adjustments to federal adjusted gross income, nonresidents derive their "as if" resident taxable income from which "as if" resident tax is computed, using the same tax rates applicable to residents. Once the "as if" resident tax has been computed, nonresidents derive an "apportionment percentage" to be applied to that amount, based on the ratio of New York source income to federal adjusted gross income. N. Y. Tax Law § 601(e)(1). The denominator of the ratio, federal adjusted gross income, includes a deduction for alimony paid, by virtue of 26 U. S. C. § 215, as incorporated into New York law by N. Y. Tax Law § 612(a). The numerator, New York source income, includes the net income from property, employment, or business operations in New York, but, by operation of § 631(b)(6), specifi-

cally disallows any deduction for alimony paid.[1]  In the last step of the computation, nonresidents multiply the "as if" resident tax by the apportionment percentage, thereby computing their actual New York income tax liability.  There is no upper limit on the apportionment percentage.  Thus, in circumstances where a nonresident's New York income, which does not include a deduction for alimony paid, exceeds federal adjusted gross income, which does, the nonresident will be liable for *more than* 100% of the "as if" resident tax.[2]

Section 631(b)(6) was enacted as part of New York's Tax Reform and Reduction Act of 1987.  Until then, nonresidents were allowed to claim a pro rata deduction for alimony expenses, pursuant to a New York Court of Appeals decision holding that New York tax law then "reflected a policy decision that nonresidents be allowed the same non-business deductions as residents, but that such deductions be allowed to nonresidents in the proportion of their New York income to income from all sources." *Friedsam* v. *State Tax Comm'n*, 64 N. Y. 2d 76, 81, 473 N. E. 2d 1181, 1184 (1984) (internal quotation marks omitted); see also Memorandum of Governor, L. 1961, ch. 68, N. Y. State Legis. Ann., 1961, p. 398 (describing former N. Y. Tax Law § 635(c)(1), which permitted nonresidents to deduct a pro rata portion of their itemized deductions, then including alimony, as "represent[ing] the fairest and most equitable solution to the problem of many years' standing" respecting the taxation of nonresidents working in New York).  Although there is no legislative history explaining the rationale for its enactment,

---

[1] Section 631(b)(6) provides that "[t]he deduction allowed by section two hundred fifteen of the internal revenue code, relating to alimony, shall not constitute a deduction derived from New York sources."

[2] See, *e. g.*, 1990 IT–203–I, Instructions for Form IT–203, Nonresident and Part-Year Resident Income Tax Return ("To figure your income percentage, divide the amount . . . in the *New York State Amount* column by the amount . . . in the *Federal Amount* column. . . . If the amount . . . in the *New York State Amount* column is more than the amount . . . in the *Federal Amount* column, the income percentage will be more than 100%").

§ 631(b)(6) clearly overruled *Friedsam*'s requirement that New York permit nonresidents a pro rata deduction for alimony payments.

B

In 1990, petitioners Christopher Lunding and his wife, Barbara, were residents of Connecticut. During that year, Christopher Lunding earned substantial income from. the practice of law in New York. That year, he also incurred alimony expenses relating to the dissolution of a previous marriage. In accordance with New York law, petitioners filed a New York Nonresident Income Tax Return to report the New York earnings. Petitioners did not comply with the limitation in § 631(b)(6), however, instead deducting a pro rata portion of alimony paid in computing their New York income based on their determination that approximately 48% of Christopher's business income was attributable to New York.

The Audit Division of the New York Department of Taxation and Finance denied that deduction and recomputed petitioners' tax liability. After recalculation without the pro rata alimony deduction, petitioners owed an additional $3,724 in New York income taxes, plus interest. Petitioners appealed the additional assessment to the New York Division of Tax Appeals, asserting that § 631(b)(6) discriminates against New York nonresidents in violation of the Privileges and Immunities, Equal Protection, and Commerce Clauses of the Federal Constitution. After unsuccessful administrative appeals, in which their constitutional arguments were not addressed, petitioners commenced an action before the Appellate Division of the New York Supreme Court, pursuant to N. Y. Tax Law § 2016 (McKinney 1987).

The Appellate Division held that § 631(b)(6) violates the Privileges and Immunities Clause, relying upon its decision in *Friedsam* v. *State Tax Comm'n*, 98 App. Div. 2d 26, 470 N. Y. S. 2d 848 (3d Dept. 1983), which had been affirmed by the New York Court of Appeals, see *supra*, at 292. 218 App.

Div. 2d 268, 639 N. Y. S. 2d 519 (3d Dept. 1996). According to the court's reasoning, "although a disparity in treatment [of nonresidents] is permitted if valid reasons exist, the Privileges and Immunities Clause proscribes such conduct . . . where there is no substantial reason for the discrimination beyond the mere fact that [nonresidents] are citizens of other States." *Id.*, at 270, 639 N. Y. S. 2d, at 520 (internal quotation marks omitted). Thus, despite the intervening enactment of § 631(b)(6), the court concluded that "there exists no substantial reason for the disparate treatment, leaving as '[t]he only criterion . . . whether the payor is a resident or nonresident.'" *Id.*, at 272, 639 N. Y. S. 2d, at 521 (quoting *Friedsam, supra*, at 29, 470 N. Y. S. 2d, at 850).

Respondents appealed to the New York Court of Appeals, which reversed the lower court's ruling and upheld the constitutionality of § 631(b)(6). 89 N. Y. 2d 283, 675 N. E. 2d 816 (1996). In its decision, the New York Court of Appeals found that *Shaffer* v. *Carter*, 252 U. S. 37 (1920), and *Travis* v. *Yale & Towne Mfg. Co.,* 252 U. S. 60 (1920), "established that limiting taxation of nonresidents to their in-State income [is] a sufficient justification for similarly limiting their deductions to expenses derived from sources producing that in-State income," and that the constitutionality of a tax law should be determined based on its "'practical effect.'" 89 N. Y. 2d, at 288, 675 N. E. 2d, at 819. The court noted that "the Privileges and Immunities Clause does not mandate absolute equality in tax treatment," and quoted from *Supreme Court of N. H.* v. *Piper*, 470 U. S. 274, 284 (1985), in explaining that the Clause is not violated where "'(i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective.'" 89 N. Y. 2d, at 289, 675 N. E. 2d, at 820.

Applying those principles to § 631(b)(6), the court determined that the constitutionality of not allowing nonresidents to deduct personal expenses had been settled by *Goodwin* v.

*State Tax Comm'n*, 286 App. Div. 694, 146 N. Y. S. 2d 172, aff'd, 1 N. Y. 2d 680, 133 N. E. 2d 711 (1955), appeal dism'd, 352 U. S. 805 (1956), in which a New Jersey resident unsuccessfully challenged New York's denial of tax deductions respecting New Jersey real estate taxes, interest payments, medical expenses, and life insurance premiums. The *Lunding* court adopted two rationales from *Goodwin* in concluding that § 631(b)(6) was adequately justified. First, the court reasoned that because New York residents are subject to the burden of taxation on all of their income regardless of source, they should be entitled to the benefit of full deduction of expenses. Second, the court concluded that where deductions represent personal expenses of a nonresident taxpayer, they are more appropriately allocated to the State of residence. 89 N. Y. 2d, at 289–290, 675 N. E. 2d, at 820.

Based on those justifications for § 631(b)(6), the court distinguished this case from its post-*Goodwin* decision, *Golden* v. *Tully*, 58 N. Y. 2d 1047, 449 N. E. 2d 406 (1983), in which New York's policy of granting a moving expense deduction to residents while denying it to nonresidents was found to violate the Privileges and Immunities Clause because "[n]o other rationale" besides the taxpayer's nonresidence "was . . . proffered to justify the discrepancy in treating residents and nonresidents." According to the court, *Golden* was decided "solely on the narrow ground that the Tax Commission in its answer and bill of particulars had offered only nonresidence as the explanation for the disallowance" of nonresidents' moving expenses. 89 N. Y. 2d, at 290, 675 N. E. 2d, at 821. The court also distinguished *Friedsam, supra,* on the ground that § 631(b)(6) was enacted to overrule that decision. 89 N. Y. 2d, at 290, 675 N. E. 2d, at 821.

As to § 631(b)(6)'s practical effect, the court noted that "nonresidents are not denied all benefit of the alimony deduction since they can claim the full amount of such payments in computing the hypothetical tax liability 'as if a resident' under Tax Law § 601(e)." *Id.,* at 291, 675 N. E. 2d, at 821.

The court rejected petitioners' contention that the lack of legislative history explaining § 631(b)(6) was of any importance, finding that "substantial reasons for the disparity in tax treatment are apparent on the face of the statutory scheme." *Ibid.* The court also rejected petitioners' claims that § 631(b)(6) violates the Equal Protection and Commerce Clauses. *Ibid.* Those claims are not before this Court.

Recognizing that the ruling of the New York Court of Appeals in this case creates a clear conflict with the Oregon Supreme Court's decision in *Wood* v. *Department of Revenue*, 305 Ore. 23, 749 P. 2d 1169 (1988), and is in tension with the South Carolina Supreme Court's ruling in *Spencer* v. *South Carolina Tax Comm'n*, 281 S. C. 492, 316 S. E. 2d 386 (1984), aff'd by an equally divided Court, 471 U. S. 82 (1985), we granted certiorari. 520 U. S. 1227 (1997). We conclude that, in the absence of a substantial reason for the difference in treatment of nonresidents, § 631(b)(6) violates the Privileges and Immunities Clause by denying only nonresidents an income tax deduction for alimony payments.

## II

### A

The object of the Privileges and Immunities Clause is to "strongly . . . constitute the citizens of the United States one people," by "plac[ing] the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned." *Paul* v. *Virginia*, 8 Wall. 168, 180 (1869). One right thereby secured is the right of a citizen of any State to "remove to and carry on business in another without being subjected in property or person to taxes more onerous than the citizens of the latter State are subjected to." *Shaffer, supra,* at 56; see also *Toomer* v. *Witsell*, 334 U. S. 385, 396 (1948); *Ward* v. *Maryland*, 12 Wall. 418, 430 (1871).

Of course, nonresidents may "be required to make a ratable contribution in taxes for the support of the govern-

ment." *Shaffer,* 252 U. S., at 53. That duty is one "to pay taxes not more onerous in effect than those imposed under like circumstances upon citizens of the . . . State." *Ibid.;* see also *Ward* v. *Maryland, supra,* at 430 (nonresidents should not be "subjected to any higher tax or excise than that exacted by law of . . . permanent residents"). Nonetheless, as a practical matter, the Privileges and Immunities Clause affords no assurance of precise equality in taxation between residents and nonresidents of a particular State. Some differences may be inherent in any taxing scheme, given that, "[l]ike many other constitutional provisions, the privileges and immunities clause is not an absolute," *Toomer, supra,* at 396, and that ."[a]bsolute equality is impracticable in taxation," *Maxwell* v. *Bugbee,* 250 U. S. 525, 543 (1919).

Because state legislatures must draw some distinctions in light of "local needs," they have considerable discretion in formulating tax policy. *Madden* v. *Kentucky,* 309 U. S. 83, 88 (1940). Thus, "where the question is whether a state taxing law contravenes rights secured by [the Federal Constitution], the decision must depend not upon any mere question of form, construction, or definition, but upon the practical operation and effect of the tax imposed." *Shaffer, supra,* at 55; see also *St. Louis Southwestern R. Co.* v. *Arkansas,* 235 U. S. 350, 362 (1914) ("[W]hen the question is whether a tax imposed by a State deprives a party of rights secured by the Federal Constitution, . . . [w]e must regard the substance, rather than the form, and the controlling test is to be found in the operation and effect of the law as applied and enforced by the State"). In short, as this Court has noted in the equal protection context, "inequalities that result not from hostile discrimination, but occasionally and incidentally in the application of a [tax] system that is not arbitrary in its classification, are not sufficient to defeat the law." *Maxwell, supra,* at 543.

We have described this balance as "a rule of substantial equality of treatment" for resident and nonresident taxpay-

ers. *Austin* v. *New Hampshire*, 420 U. S. 656, 665 (1975). Where nonresidents are subject to different treatment, there must be "reasonable ground for . . . diversity of treatment." *Travis*, 252 U. S., at 79; see also *Travellers' Ins. Co.* v. *Connecticut*, 185 U. S. 364, 371 (1902) ("It is enough that the State has secured a reasonably fair distribution of burdens"). As explained in *Toomer*, the Privileges and Immunities Clause bars

> "discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States. But it does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it. Thus the inquiry in each case must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relationship to them. The inquiry must also, of course, be conducted with due regard for the principle that the States should have considerable leeway in analyzing local evils and in prescribing appropriate cures." 334 U. S., at 396.

Thus, when confronted with a challenge under the Privileges and Immunities Clause to a law distinguishing between residents and nonresidents, a State may defend its position by demonstrating that "(i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective." *Piper*, 470 U. S., at 284.

Our concern for the integrity of the Privileges and Immunities Clause is reflected through a "standard of review substantially more rigorous than that applied to state tax distinctions, among, say, forms of business organizations or different trades and professions." *Austin, supra,* at 663. Thus, as both the New York Court of Appeals, 89 N. Y. 2d, at 290, 675 N. E. 2d, at 820, and the State, Brief for Respondent

Commissioner of Taxation and Finance 10–11, appropriately acknowledge, the State must defend § 631(b)(6) with a substantial justification for its different treatment of nonresidents, including an explanation of how the discrimination relates to the State's justification.

## B

Our review of the State's justification for § 631(b)(6) is informed by this Court's precedent respecting Privileges and Immunities Clause challenges to nonresident income tax provisions. In *Shaffer* v. *Carter*, the Court upheld Oklahoma's denial of deductions for out-of-state losses to nonresidents who were subject to Oklahoma's tax on in-state income. The Court explained:

> "The difference . . . is only such as arises naturally from the extent of the jurisdiction of the State in the two classes of cases, and cannot be regarded as an unfriendly or unreasonable discrimination. As to residents, it may, and does, exert its taxing power over their income from all sources, whether within or without the State, and it accords to them a corresponding privilege of deducting their losses, wherever these accrue. As to nonresidents, the jurisdiction extends only to their property owned within the State and their business, trade, or profession carried on therein, and the tax is only on such income as is derived from those sources. Hence there is no obligation to accord to them a deduction by reason of losses elsewhere incurred." 252 U. S., at 57.

In so holding, the Court emphasized the practical effect of the provision, concluding that "the nonresident was not treated more onerously than the resident in any particular, and in fact was called upon to make no more than his ratable contribution to the support of the state government." *Austin, supra,* at 664.

*Shaffer* involved a challenge to the State's denial of business-related deductions. The record in *Shaffer* dis-

closes that, while Oklahoma law specified that nonresidents were liable for Oklahoma income tax on "the entire net income from all property owned, and of every business, trade or profession carried on in [Oklahoma]," there was no express statutory bar preventing nonresidents from claiming the same nonbusiness exemptions and deductions as were available to resident taxpayers. See Tr. of Record in *Shaffer* v. *Carter*, O. T. 1919, No. 531, pp. 15–18 (Ch. 164, Okla. House Bill No. 599 (1910), §§ 1, 5, 6, 8); see also Brief on Behalf of Appellant in *Shaffer* v. *Carter*, O. T. 1919, No. 531, p. 91 ("In the trial court, . . . the [Oklahoma] Attorney General asserted that the appellant has the same personal exemptions as a resident of Oklahoma").

In *Travis* v. *Yale & Towne Mfg. Co.*, a Connecticut corporation doing business in New York sought to enjoin enforcement of New York's nonresident income tax laws on behalf of its employees, who were residents of Connecticut and New Jersey. In an opinion issued on the same day as *Shaffer*, the Court affirmed *Shaffer*'s holding that a State may limit the deductions of nonresidents to those related to the production of in-state income. See *Travis*, 252 U. S., at 75–76 (describing *Shaffer* as settling that "there is no unconstitutional discrimination against citizens of other States in confining the deduction of expenses, losses, etc., in the case of non-resident taxpayers, to such as are connected with income arising from sources within the taxing State"). The record in *Travis* clarifies that many of the expenses and losses of nonresidents that New York law so limited were business related, such as ordinary and necessary business expenses, depreciation on business assets, and depletion of natural resources, such as oil, gas, and timber. At the time that *Travis* was decided, New York law also allowed nonresidents a pro rata deduction for various nonbusiness expenses, such as interest paid (based on the proportion of New York source income to total income), a deduction for taxes paid (other than income taxes) to the extent those taxes were connected with New York

income, and a deduction for uncompensated losses sustained in New York resulting from limited circumstances, namely, nonbusiness transactions entered into for profit and casualty losses. Both residents and nonresidents were entitled to the same deduction for contributions to charitable organizations organized under the laws of New York. Tr. of Record in *Travis* v. *Yale & Towne Mfg. Co.,* O. T. 1919, No. 548 (State of New York, The A, B, C of the Personal Income Tax Law, pp. 11–12, 14, ¶¶ 42, 44 (1919)). Thus, the statutory provisions disallowing nonresidents' tax deductions at issue in *Travis* essentially mirrored those at issue in *Shaffer* because they tied nonresidents' deductions to their in-state activities.

Another provision of New York's nonresident tax law challenged in *Travis* did not survive scrutiny under the Privileges and Immunities Clause, however. Evincing the same concern with practical effect that animated the *Shaffer* decision, the *Travis* Court struck down a provision that denied only nonresidents an exemption from tax on a certain threshold of income, even though New York law allowed nonresidents a corresponding credit against New York taxes in the event that they paid resident income taxes in some other State providing a similar credit to New York residents. The Court rejected the argument that the rule was "a case of occasional or accidental inequality due to circumstances personal to the taxpayer." 252 U. S., at 80. Nor was denial of the exemption salvaged "upon the theory that non-residents have untaxed income derived from sources in their home States or elsewhere outside of the State of New York, corresponding to the amount upon which residents of that State are exempt from taxation [by New York] under this act," because "[t]he discrimination is not conditioned upon the existence of such untaxed income; and it would be rash to assume that non-residents taxable in New York under this law, as a class, are receiving additional income from outside sources equivalent to the amount of the exemptions that are accorded to citizens of New York and denied to them." *Id.,*

at 81. Finally, the Court rejected as speculative and constitutionally unsound the argument that States adjoining New York could adopt an income tax, "in which event, injustice to their citizens on the part of New York could be avoided by providing similar exemptions similarly conditioned." *Id.*, at 82.

In *Austin,* a more recent decision reviewing a State's taxation of nonresidents, we considered a commuter tax imposed by New Hampshire, the effect of which was to tax only nonresidents working in that State. The Court described its previous decisions, including *Shaffer* and *Travis,* as "establishing a rule of substantial equality of treatment for the citizens of the taxing State and nonresident taxpayers," under which New Hampshire's one-sided tax failed. 420 U. S., at 665.

*Travis* and *Austin* make clear that the Privileges and Immunities Clause prohibits a State from denying nonresidents a general tax exemption provided to residents, while *Shaffer* and *Travis* establish that States may limit nonresidents' deductions of business expenses and nonbusiness deductions based on the relationship between those expenses and in-state property or income. While the latter decisions provide States a considerable amount of leeway in aligning the tax burden of nonresidents to in-state activities, neither they nor *Austin* can be fairly read as holding that the Privileges and Immunities Clause permits States to categorically deny personal deductions to a nonresident taxpayer, without a substantial justification for the difference in treatment.

### III

In this case, New York acknowledges the right of nonresidents to pursue their livelihood on terms of substantial equality with residents. There is no question that the issue presented in this case is likely to affect many individuals, given the fact that it is common for nonresidents to enter

New York City to pursue their livelihood, "it being a matter of common knowledge that from necessity, due to the geographical situation of [New York City], in close proximity to the neighboring States, many thousands of men and women, residents and citizens of those States, go daily from their homes to the city and earn their livelihood there." *Travis*, 252 U. S., at 80. In attempting to justify the discrimination against nonresidents effected by § 631(b)(6), respondents assert that because the State only has jurisdiction over nonresidents' in-state activities, its limitation on nonresidents' deduction of alimony payments is valid. Invoking *Shaffer* and *Travis*, the State maintains that it should not be required to consider expenses "wholly linked to personal activities outside New York." Brief for Respondent Commissioner of Taxation and Finance 24. We must consider whether that assertion suffices to substantially justify the challenged statute.

## A

Looking first at the rationale the New York Court of Appeals adopted in upholding § 631(b)(6), we do not find in the court's decision any reasonable explanation or substantial justification for the discriminatory provision. Although the court purported to apply the two-part inquiry derived from *Toomer* and *Piper*, in the end, the justification for § 631(b)(6) was based on rationales borrowed from another case, *Goodwin* v. *State Tax Comm'n*, 286 App. Div. 694, 146 N. Y. S. 2d 172, aff'd, 1 N. Y. 2d 680, 133 N. E. 2d 711 (1955), appeal dism'd, 352 U. S. 805 (1956). There, a New Jersey resident challenged New York's denial of deductions for real estate taxes and mortgage interest on his New Jersey home, and his medical expenses and life insurance premiums. The challenge in that case, however, was to a provision of New York tax law substantially similar to that considered in *Travis*, under which nonresident taxpayers were allowed deductions "'only if and to the extent that, they are connected

with [taxable] income arising from sources within the state.'" 286 App. Div., at 695, 146 N. Y. S. 2d, at 175 (quoting then N. Y. Tax Law § 360(11)).

There is no analogous provision in § 631(b)(6), which plainly limits nonresidents' deduction of alimony payments, irrespective of whether those payments might somehow relate to New York-source income. Although the *Goodwin* court's rationale concerning New York's disallowance of nonresidents' deduction of life insurance premiums and medical expenses assumed that such expenses, "made by [the taxpayer] in the course of his personal activities, . . . must be regarded as having taken place in . . . the state of his residence," *id.*, at 701, 146 N. Y. S. 2d, at 180, the court also found that those expenses "embodie[d] a governmental policy designed to serve a legitimate social end," *ibid.*, namely, "to encourage [New York] citizens to obtain life insurance protection and . . . to help [New York] citizens bear the burden of an extraordinary illness or accident," *id.*, at 700, 146 N. Y. S. 2d, at 179.

In this case, the New York Court of Appeals similarly described petitioners' alimony expenses as "wholly linked to personal activities outside the State," but did not articulate any policy basis for § 631(b)(6), save a reference in its discussion of petitioners' Equal Protection Clause claim to the State's "policy of taxing only those gains realized and losses incurred by a nonresident in New York, while taxing residents on all income." 89 N. Y. 2d, at 291, 675 N. E. 2d, at 821. Quite possibly, no other policy basis for § 631(b)(6) exists, given that, at the time *Goodwin* was decided, New York appears to have allowed nonresidents a deduction for alimony paid as long as the recipient was a New York resident required to include the alimony in income. See N. Y. Tax Law § 360(17) (1944). And for several years preceding § 631(b)(6)'s enactment, New York law permitted nonresidents to claim a pro rata deduction of alimony paid regardless of the recipient's residence. See *Friedsam*, 64 N. Y. 2d,

at 81–82, 473 N. E. 2d, at 1184 (interpreting N. Y. Tax Law § 635(c)(1) (1961)).

In its reliance on *Goodwin*, the New York Court of Appeals also failed to account for the fact that, through its broad 1987 tax reforms, New York adopted a new system of nonresident taxation that ties the income tax liability of nonresidents to the tax that they would have paid if they were residents. Indeed, a nonresident's "as if" tax liability, which determines both the tax rate and total tax owed, is based on federal adjusted gross income from *all* sources, not just New York sources. In computing their "as if" resident tax liability, nonresidents of New York are permitted to consider every deduction that New York residents are entitled to, both business and personal. It is only in the computation of the apportionment percentage that New York has chosen to isolate a specific deduction of nonresidents, alimony paid, as entirely nondeductible under any circumstances. Further, after *Goodwin* but before this case, the New York Court of Appeals acknowledged, in *Friedsam*, *supra*, that the State's policy and statutes favored parity, on a pro rata basis, in the allowance of personal deductions to residents and nonresidents. Accordingly, in light of the questionable relevance of *Goodwin* to New York's current system of taxing nonresidents, we do not agree with the New York Court of Appeals that "substantial reasons for the disparity in tax treatment are apparent on the face of [§ 631(b)(6)]," 89 N. Y. 2d, at 291, 675 N. E. 2d, at 821.

We also take little comfort in the fact, noted by the New York Court of Appeals, that § 631(b)(6) does not deny nonresidents all benefit of the alimony deduction because that deduction is included in federal adjusted gross income, one of the components in the nonresident's computation of his New York tax liability. See *id.*, at 290–291, 675 N. E. 2d, at 821. That finding seems contrary to the impression of New York's Commissioner of Taxation and Finance as expressed in an advisory opinion, *In re Rosenblatt*, 1989–1990 Transfer

Binder, CCH N. Y. Tax Rep. ¶ 252–998, p. 17,969 (Jan. 18, 1990), in which the Commissioner explained that "[t]he effect of [§ 631(b)(6)'s] allowance of the [alimony] deduction in the . . . denominator and disallowance in the numerator is that Petitioner cannot get the benefit of a proportional deduction of the alimony payments made to his spouse." In any event, respondents have never argued to this Court that § 631(b)(6) effects anything other than a denial of nonresidents' alimony deductions. Though the inclusion of the alimony deduction in a nonresident's federal adjusted gross income reduces the nonresident's "as if" tax liability, New York effectively takes the alimony deduction back in the "apportionment percentage" used to determine the actual tax owed, because the numerator of that percentage does not include any deduction for alimony paid, while the denominator does include such a deduction.

In summarizing its holding, the New York Court of Appeals explained that, because "there can be no serious argument that petitioners' alimony deductions are legitimate business expenses[,] . . . the approximate equality of tax treatment required by the Constitution is satisfied, and greater fine-tuning in this tax scheme is not constitutionally mandated." 89 N. Y. 2d, at 291, 675 N. E. 2d, at 821. This Court's precedent, however, should not be read to suggest that tax schemes allowing nonresidents to deduct only their business expenses are *per se* constitutional, and we must accordingly inquire further into the State's justification for § 631(b)(6) in light of its practical effect.

### B

Turning to respondents' arguments to this Court, as an initial matter, we reject the State's suggestion that this Court's summary dismissals in several other cases should be dispositive of the question presented in this case. See Brief for Respondent Commissioner of Taxation and Finance 15–

16, n. 8.[3]   Although we have noted that "[o]ur summary dismissals are . . . to be taken as rulings on the merits in the sense that they rejected the specific challenges presented . . . and left undisturbed the judgment appealed from," we have also explained that they do not "have the same precedential value . . . as does an opinion of this Court after briefing and oral argument on the merits." *Washington v. Confederated Bands and Tribes of Yakima Nation,* 439 U. S. 463, 477, n. 20 (1979) (citations and internal quotation marks omitted).   "It is not at all unusual for the Court to find it appropriate to give full consideration to a question that has been the subject of previous summary action," *ibid.,* particularly where, as here, other courts have arrived at dissimilar outcomes.   In any event, none of the cases on which the State relies involved the unique problem presented here, the complete denial of deductions for nonresidents' alimony payments.

In the context of New York's overall scheme of nonresident taxation, § 631(b)(6) is an anomaly.   New York tax law

---

[3] See *Goodwin v. State Tax Comm'n,* 286 App. Div. 694, 146 N. Y. S. 2d 172, aff'd, 1 N. Y. 2d 680, 133 N. E. 2d 711 (1955) (involving State's denial of deductions not related to in-state activities, including medical expenses and life insurance premiums), appeal dism'd, 352 U. S. 805 (1956); see also *Lung v. O'Chesky,* 94 N. M. 802, 617 P. 2d 1317 (1980) (involving State's denial of grocery and medical tax rebates to nonresidents), appeal dism'd, 450 U. S. 961 (1981); *Rubin v. Glaser,* 83 N. J. 299, 416 A. 2d 382 (involving State's limitation of homestead tax rebate to principal residences of residents), appeal dism'd, 449 U. S. 977 (1980); *Davis v. Franchise Tax Board,* 71 Cal. App. 3d 998, 139 Cal. Rptr. 797 (1977) (involving State's denial of income averaging method of tax computation to nonresidents), appeal dism'd, 434 U. S. 1055 (1978); *Wilson v. Department of Revenue,* 267 Ore. 103, 514 P. 2d 1334 (1973) (involving State's limitation of nonresident's deductions to those connected with in-state income), appeal dism'd, 416 U. S. 964 (1974); *Anderson v. Tiemann,* 182 Neb. 393, 155 N. W. 2d 322 (1967) (involving State's denial of food sales tax credit to nonresidents), appeal dism'd, 390 U. S. 714 (1968); *Berry v. State Tax Comm'n,* 241 Ore. 580, 397 P. 2d 780 (1964) (involving State's limitation of nonresidents' personal deductions to those connected with in-state income), appeal dism'd, 382 U. S. 16 (1965).

currently permits nonresidents to avail themselves of what amounts to a pro rata deduction for other tax-deductible personal expenses besides alimony. Before 1987, New York law also allowed nonresidents to deduct a pro rata share of alimony payments. The New York State Tax Commissioner's advisory opinion in *In re Rosenblatt* indicates that § 631(b)(6) may have been intended to overrule *Friedsam.* See *In re Rosenblatt, supra,* ¶ 252–998, at 17,969 (Section 631(b)(6) "specifically reversed *Friedson [sic]* v. *State Tax Comm'n,* 64 N. Y. 2d 76 (1984), which had allowed an alimony deduction to a nonresident according to the formula for allocation of itemized deductions by the nonresident"). Certainly, as the New York Court of Appeals found, § 631(b)(6) "had the effect of removing [the] impairment" imposed by *Friedsam,* 89 N. Y. 2d, at 290, 675 N. E. 2d, at 821, thereby implying a disavowal of the State's previous policy of substantial equality between residents and nonresidents.

The policy expressed in *Friedsam,* which acknowledged the principles of equality and fairness underlying the Privileges and Immunities Clause, was not merely an "impairment," however. Although the State has considerable freedom to establish and adjust its tax policy respecting nonresidents, the end results must, of course, comply with the Federal Constitution, and any provision imposing disparate taxation upon nonresidents must be appropriately justified. As this Court has explained, where "the power to tax is not unlimited, validity is not established by the mere imposition of a tax." *Mullaney* v. *Anderson,* 342 U. S. 415, 418 (1952).

To justify § 631(b)(6), the State refers to a statement, presented in 1959 by New York's then-Commissioner of Taxation and Finance before a Subcommittee of the House Judiciary Committee. In that statement, the Commissioner explained, "'[s]ince legally we do not and cannot recognize the existence of [non-New York source] income, we have felt that, in general, we cannot recognize . . . other deductions,

which, in the main, are of a personal nature and are unconnected with the production of income in New York.'" Brief for Respondent Commissioner of Taxation and Finance 14 (quoting statement of Hon. Joseph H. Murphy, Taxation of Income of Nonresidents, Hearing on H. J. Res. 33 et al. and H. R. 4174 et al. before Subcommittee No. 2 of the House Committee on the Judiciary, 86th Cong., 1st Sess., 98–99 (1959)). Yet there is good reason to question whether that statement actually is a rationale for § 631(b)(6), given substantial evidence to the contrary, in both the history of the State's treatment of nonresidents' alimony deductions,[4] and its current treatment of other personal deductions.

Moreover, to the extent that the cited testimony suggests that no circumstances exist under which a State's denial of personal deductions to nonresidents could be constrained, we reject its premise. Certainly, as the Court found in *Travis*, 252 U. S., at 79–80, nonresidents must be allowed tax exemptions in parity with residents. And the most that the Court has suggested regarding nonresidents' nonbusiness expenses is that their deduction may be limited to the proportion of those expenses rationally related to in-state income or activities. See *Shaffer*, 252 U. S., at 56–57.

As a practical matter, the Court's interpretation of the Privileges and Immunities Clause in *Travis* and *Shaffer* implies that States may effectively limit nonresidents' deduction of certain personal expenses based on a reason as simple as the fact that those expenses are clearly related to residence in another State. But here, § 631(b)(6) does not incorporate such analysis on its face or, according to the New York Court of Appeals, through legislative history, see 89

---

[4] See 1943 N. Y. Laws, ch. 245, § 3 (alimony deductions allowed only when recipient is subject to New York tax); 1944 N. Y. Laws, ch. 333, § 2 (alimony deduction allowed to all residents and to nonresidents only if recipient is subject to New York tax); 1961 N. Y. Laws, ch. 68, § 1 (itemized deductions, including alimony, generally allowed to nonresidents in proportion to New York source income).

N. Y. 2d, at 290–291, 675 N. E. 2d, at 821. Moreover, there are situations in which § 631(b)(6) could operate to require nonresidents to pay significantly more tax than identically situated residents. For example, if a nonresident's earnings were derived primarily from New York sources, the effect of § 631(b)(6) could be to raise the tax apportionment percentage above 100%, thereby requiring that individual to pay *more* tax than an identically situated resident, solely because of the disallowed alimony deduction. Under certain circumstances, the taxpayer could even be liable for New York taxes approaching or even exceeding net income.

There is no doubt that similar circumstances could arise respecting the apportionment for tax purposes of income or expenses based on in-state activities without a violation of the Privileges and Immunities Clause. Such was the case in *Shaffer*, despite the petitioner's attempt to argue that he should be allowed to offset net business income taxed by Oklahoma with business losses incurred in other States. See 252 U. S., at 57. It is one thing, however, for an anomalous situation to arise because an individual has greater profits from business activities or property owned in one particular State than in another. An entirely different situation is presented by a facially inequitable and essentially unsubstantiated taxing scheme that denies only nonresidents a tax deduction for alimony payments, which while surely a personal matter, see *United States* v. *Gilmore*, 372 U. S. 39, 44 (1963), arguably bear some relationship to a taxpayer's overall earnings. Alimony payments also differ from other types of personal deductions, such as mortgage interest and property tax payments, whose situs can be determined based on the location of the underlying property. Thus, unlike the expenses discussed in *Shaffer*, alimony payments cannot be so easily characterized as "losses elsewhere incurred." 252 U. S., at 57. Rather, alimony payments reflect an obligation of some duration that is determined in large measure by an individual's income generally, wherever it is earned. The

alimony obligation may be of a "personal" nature, but it cannot be viewed as geographically fixed in the manner that other expenses, such as business losses, mortgage interest payments, or real estate taxes, might be.

Accordingly, contrary to the dissent's suggestion, *post,* at 321, 326–327, we do not propose that States are required to allow nonresidents a deduction for all manner of personal expenses, such as taxes paid to other States or mortgage interest relating to an out-of-state residence. Nor do we imply that States invariably must provide to nonresidents the same manner of tax credits available to residents. Our precedent allows States to adopt justified and reasonable distinctions between residents and nonresidents in the provision of tax benefits, whether in the form of tax deductions or tax credits. In this case, however, we are not satisfied by the State's argument that it need not consider the impact of disallowing nonresidents a deduction for alimony paid merely because alimony expenses are personal in nature, particularly in light of the inequities that could result when a nonresident with alimony obligations derives nearly all of her income from New York, a scenario that may be "typical," see *Travis, supra,* at 80. By requiring nonresidents to pay more tax than similarly situated residents solely on the basis of whether or not the nonresidents are liable for alimony payments, § 631(b)(6) violates the "rule of substantial equality of treatment" this Court described in *Austin,* 420 U. S., at 665.

C

Respondents also propose that § 631(b)(6) is "consistent with New York's taxation of families generally." Brief for Respondent Commissioner of Taxation and Finance 14–15. It has been suggested that one purpose of New York's 1987 tax law changes was to adopt a regime of "income splitting," under which each spouse in a marital relationship is taxed on an equal share of the total income from the marital unit. *Ibid.* (citing McIntyre & Pomp, State Income Tax Treatment

of Residents and Nonresidents Under the Privileges and Immunities Clause, 13 State Tax Notes 245, 249 (1997)). A similar effect is achieved in the case of marital dissolution by allowing the payer of alimony to exclude the payment from income and requiring the recipient to report a corresponding increase in income. Such treatment accords with provisions adopted in 1942 by the Federal Government as a means of adjusting tax burdens on alimony payers who, without a deduction for alimony paid, could face a tax liability greater than their remaining income after payment of alimony. See Committee Report, Revenue Act of 1942, 1942–2 C. B. 409.

In the federal system, when one resident taxpayer pays alimony to another, the payer's alimony deduction is offset by the alimony income reported by the recipient, leading to parity in the allocation of the overall tax burden. Section 631(b)(6), however, disallows nonresidents' entire alimony expenses with no consideration given to whether New York income tax will be paid by the recipients. Respondents explain that such concerns are simply irrelevant to New York's taxation of nonresidents, because "[e]xtending the benefit of income splitting to nonresidents is inappropriate on tax policy grounds because nonresidents are taxed by New York on only a slice of their income—that derived from New York sources." Brief for Respondent Commissioner of Taxation and Finance 15. Such analysis, however, begs the question whether there is a substantial reason for the difference in treatment, and is therefore not appreciably distinct from the State's assertion that no such justification is required because § 631(b)(6) does not concern business expenses.

Indeed, we fail to see how New York's disregard for the residence of the alimony recipient does anything more than point out potential inequities in the operation of § 631(b)(6). Certainly, the concept of income splitting works when both former spouses are residents of the

same State, because one spouse receives a tax deduction corresponding to the other's reported income, thereby making the state treasury whole (after adjustment for differences in the spouses' respective tax rates). The scheme also results in an equivalent allocation of total tax liability when one spouse is no longer a resident of the same State, because each spouse retains the burden of paying resident income taxes due to his or her own State on their share of the split income. The benefit of income splitting disappears, however, when a State in which neither spouse resides essentially imposes a surtax on the alimony, such as the tax increase New York imposes through § 631(b)(6). And, at the extreme, when a New York resident receives alimony payments from a nonresident New York taxpayer, § 631(b)(6) results in a double-taxation windfall for the State: The recipient pays taxes on the alimony but the nonresident payer is denied any deduction. Although such treatment may accord with the Federal Government's treatment of taxpayers who are nonresident aliens, see 26 U. S. C. §§ 872 and 873, the reasonableness of such a scheme on a national level is a different issue that does not implicate the Privileges and Immunities Clause guarantee that individuals may migrate between States to live and work.

## D

Finally, several States, as *amici* for respondents, assert that § 631(b)(6) could not "have any more than a *de minimis* effect on the run-of-the-mill taxpayer or comity among the States," because States imposing an income tax typically provide a deduction or credit to their residents for income taxes paid to other States. Brief for State of Ohio et al. 8. Accordingly, their argument runs, "[a]ll things being equal . . . the taxpayer would pay roughly the same total tax in the two States, the only difference being that [the taxpayer's resident State] would get more and New York less of the revenue." *Ibid.* There is no basis for such an assertion in

the record before us. In fact, in the year in question, Connecticut imposed no income tax on petitioners' earned income. Reply Brief for Petitioners 4, n. 1. "Nor, we may add, can the constitutionality of one State's statutes affecting nonresidents depend upon the present configuration of the statutes of another State." *Austin,* 420 U. S., at 668; see also *Travis,* 252 U. S., at 81–82.

## IV

In sum, we find that the State's inability to tax a nonresident's entire income is not sufficient, in and of itself, to justify the discrimination imposed by § 631(b)(6). While States have considerable discretion in formulating their income tax laws, that power must be exercised within the limits of the Federal Constitution. Tax provisions imposing discriminatory treatment on nonresident individuals must be reasonable in effect and based on a substantial justification other than the fact of nonresidence.

Although the Privileges and Immunities Clause does not prevent States from requiring nonresidents to allocate income and deductions based on their in-state activities in the manner described in *Shaffer* and *Travis,* those opinions do not automatically guarantee that a State may disallow nonresident taxpayers every manner of nonbusiness deduction on the assumption that such amounts are inevitably allocable to the State in which the taxpayer resides. Alimony obligations are unlike other expenses that can be related to activities conducted in a particular State or property held there. And as a personal obligation that generally correlates with a taxpayer's total income or wealth, alimony bears some relationship to earnings regardless of their source. Further, the manner in which New York taxes nonresidents, based on an allocation of an "as if" resident tax liability, not only imposes upon nonresidents' income the effect of New York's graduated tax rates but also imports a corresponding element of fairness in allowing nonresidents a pro rata deduc-

tion of other types of personal expenses. It would seem more consistent with that taxing scheme and with notions of fairness for the State to allow nonresidents a pro rata deduction for alimony paid, as well.

. Under the circumstances, we find that respondents have not presented a substantial justification for the categorical denial of alimony deductions to nonresidents. The State's failure to provide more than a cursory justification for § 631(b)(6) smacks of an effort to "penaliz[e] the citizens of other States by subjecting them to heavier taxation merely because they are such citizens," *Toomer,* 334 U. S., at 408 (Frankfurter, J., concurring). We thus hold that § 631(b)(6) is an unwarranted denial to the citizens of other States of the privileges and immunities enjoyed by the citizens of New York.

Accordingly, the decision of the New York Court of Appeals is reversed, and the case is remanded for proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE GINSBURG, with whom THE CHIEF JUSTICE and JUSTICE KENNEDY join, dissenting. .

New York and other States follow the Federal Government's lead[1] in according an income tax deduction for alimony to resident taxpayers only.[2] That tax practice, I

---

[1] See 26 U. S. C. §§ 872–873; McIntyre & Pomp, State Income Tax Treatment of Residents and Nonresidents Under the Privileges and Immunities Clause, 13 State Tax Notes 245, 248–249 (1997).

[2] Four States in addition to New York—Alabama, California, West Virginia, and Wisconsin—expressly limit the alimony deduction to residents. See Ala. Code § 40–18–15(18) (1993); Cal. Rev. and Tax. Code Ann. § 17302 (West 1994); W. Va. Code § 11–21–32(b)(4) (1995); Wis. Stat. § 71.05(6)(a)(12) (1989). Two other States—Illinois and Ohio—restrict nonresidents to specified deductions and adjustments in calculating in-state income, and do not list the alimony deduction as one available to nonresidents. See Ill. Comp. Stat., ch. 35, § 5/301(c)(2)(A) (1996); Ohio Rev. Code Ann. . § 5747.20(B)(6) (1994).

conclude, does not offend the nondiscrimination principle embodied in the Privileges and Immunities Clause of Article IV, § 2. I therefore dissent from the Court's opinion.

## I

To put this case in proper perspective, it is helpful to recognize not only that alimony payments are "surely a personal matter," *ante*, at 310; in addition, alimony payments are "unlike other . . . personal obligation[s]," *ante*, at 314. Under federal tax law, mirrored in state tax regimes, alimony is included in the recipient's gross income, 26 U. S. C. § 71(a), and the payer is allowed a corresponding deduction, §§ 215(a), 62(a)(10), for payments taxable to the recipient. This scheme "can best be seen as a determination with respect to choice of taxable person rather than as rules relating to the definition of income or expense. In effect, the [alimony payer] is treated as a conduit for gross income that legally belongs to the [alimony recipient] under the divorce decree." M. Chirelstein, Federal Income Taxation ¶ 9.05, p. 230 (8th ed. 1997) (hereinafter Chirelstein); see also B. Bittker & M. McMahon, Federal Income Taxation of Individuals ¶ 36.7, p. 36–18 (2d ed. 1995) ("Unlike most other personal deductions, [the deduction for alimony payments] is best viewed as a method of designating the proper taxpayer for a given amount of income, rather than a tax allowance for particular expenditures. In combination, § 71 [allowing a deduction to the alimony payer] and § 215 [requiring the alimony recipient to include the payment in gross income] treat part of the [payer]'s income as though it were received subject to an offsetting duty to pay it to the payee."). New York applies this scheme to resident alimony payers. But N. Y. Tax Law § 631(b)(6) (McKinney 1987) declares that, in the case of a nonresident with New York source income, the alimony deduction for which federal law provides "shall not constitute a deduction derived from New York sources."

Thus, if petitioner Christopher Lunding and his former spouse were New York residents, his alimony payments would be included in his former spouse's gross income for state as well as federal income tax purposes, and he would receive a deduction for the payments. In other words, New York would tax the income once, but not twice. In fact, however, though Lunding derives a substantial part of his gross income from New York sources, he and his former spouse reside in Connecticut. That means, he urges, that New York may not tax the alimony payments at all. Compared to New York divorced spouses, in short, Lunding seeks a windfall, not an escape from double taxation, but a total exemption from New York's tax for the income in question. This beneficence to nonresidents earning income in New York, he insists, is what the Privileges and Immunities Clause of Article IV, §2, of the United States Constitution demands.

Explaining why New York must so favor Connecticut residents over New York residents, Lunding invites comparisons with other broken marriages—cases in which one of the former spouses resides in New York and the other resides elsewhere. First, had Lunding's former spouse moved from Connecticut to New York, New York would count the alimony payments as income to her, but would nonetheless deny him, because of his out-of-state residence, any deduction. In such a case, New York would effectively tax the same income twice, first to the payer by giving him no deduction, then to the recipient, by taxing the payments as gross income to her. Of course, that is not Lunding's situation, and one may question his standing to demand that New York take nothing from him in order to offset the State's arguably excessive taxation of others.

More engagingly, Lunding compares his situation to that of a New York resident who pays alimony to a former spouse living in another State. In such a case, New York would permit the New Yorker to deduct the alimony payments,

even though the recipient pays no tax to New York on the income transferred to her. New York's choice, according to Lunding, is to deny the alimony deduction to the New Yorker whose former spouse resides out of state, or else extend the deduction to him. The Court apparently agrees. At least, the Court holds, New York "has not adequately justified" the line it has drawn. *Ante*, at 290.

The Court's condemnation of New York's law seems to me unwarranted. As applied to a universe of former marital partners who, like Lunding and his former spouse, reside in the same State, New York's attribution of income to *someone* (either payer or recipient) is hardly unfair. True, an occasional New York resident will be afforded a deduction though his former spouse, because she resides elsewhere, will not be chased by New York's tax collector. And an occasional New York alimony recipient will be taxed despite the nonresidence of her former spouse. But New York could legitimately assume that in most cases, as in the Lundings' case, payer and recipient will reside in the same State. Moreover, in cases in which the State's system is overly generous (New York payer, nonresident recipient) or insufficiently generous (nonresident payer, New York recipient), there is no systematic discrimination discretely against nonresidents, for the pairs of former spouses in both cases include a resident and a nonresident.

In reviewing state tax classifications, we have previously held it sufficient under the Privileges and Immunities Clause that "the State has secured a reasonably fair distribution of burdens, and that no intentional discrimination has been made against non-residents." *Travellers' Ins. Co.* v. *Connecticut*, 185 U. S. 364, 371 (1902). In *Travellers*, the Court upheld a state tax that was facially discriminatory: Nonresidents who held stock in Connecticut corporations owed tax to the State on the full value of their holdings, while resident stockholders were entitled to a deduction for their proportionate share of the corporation's Connecticut real estate.

But the State's tax system as a whole was not discriminatory, for although residents were entitled to deduct their share of the corporation's Connecticut real estate from their *state* taxes, they were required to pay *municipal* taxes on that property; nonresidents owed no municipal taxes. See *id.*, at 367. Municipal taxes varied across the State, so residents in low-tax municipalities might end up paying lower taxes than nonresidents. Nonetheless, "the mere fact that in a given year the actual workings of the system may result in a larger burden on the non-resident was properly held not to vitiate the system, for a different result might obtain in a succeeding year, the results varying with the calls made in the different localities for local expenses." *Id.*, at 369.

*Travellers* held that tax classifications survive Privileges and Immunities Clause scrutiny if they provide a rough parity of treatment between residents and nonresidents. See also *Austin* v. *New Hampshire*, 420 U. S. 656, 665 (1975) (Privileges and Immunities Clause precedents "establis[h] a rule of substantial equality of treatment"). That holding accords with the Court's observation in *Baldwin* v. *Fish and Game Comm'n of Mont.*, 436 U. S. 371, 383 (1978), that "[s]ome distinctions between residents and nonresidents merely reflect the fact that this is a Nation composed of individual States, and are permitted; other distinctions are prohibited because they hinder the formation, the purpose, or the development of a single Union of those States." A tax classification that does not systematically discriminate against nonresidents cannot be said to "hinder the formation, the purpose, or the development of a single Union." See McIntyre & Pomp, Post-Marriage Income Splitting through the Deduction for Alimony Payments, 13 State Tax Notes 1631, 1635 (1997) (urging that the Privileges and Immunities Clause does not require New York to forgo the income-splitting objective served by its alimony rules when both payer and recipient are residents of the same State simply because "results may be less than ideal" "when one of the

parties to the alimony transaction is a resident and the other is a nonresident").[3]

I would affirm the judgment of the New York Court of Appeals as consistent with the Court's precedent, and would not cast doubt, as today's decision does, on state tax provisions long considered secure.

## II

Viewing this case as one discretely about alimony, I would accept New York's law as a fair adaptation, at the state level, of the current United States system. The Court notes but shies away from this approach, see *ante*, at 311–313, expressing particular concern about double taxation in the "extreme" case not before us—the "New York resident [who] receives alimony payments from a nonresident New York taxpayer," *ante*, at 313.[4] Instead, the Court treats alimony as one among several personal expenses a State makes deductible.

Significantly, the Court's approach conforms to no historic pattern. "Historically, both alimony and child support were treated as personal expenses nondeductible [by the payer]

[3] Nor does it appear that New York gains "an unfair share of tax revenue" by denying nonresident alimony payers a deduction even when the recipient is a resident. McIntyre & Pomp, Post-Marriage Income Splitting through the Deduction for Alimony Payments, 13 State Tax Notes, at 1635. Alimony payments into and out of a State, it seems reasonable to assume, are approximately in balance; if that is so, then the revenue New York receives under its current regime is roughly equivalent to the revenue it would generate by granting a deduction to nonresident alimony payers with resident recipients and denying the deduction to resident payers with nonresident recipients. See *ibid.*

[4] As already observed, Lunding, who seeks to escape any state tax on the income in question (Connecticut, his State of residence, had no income tax in the year in issue), is hardly a fit representative of the individuals who elicit the Court's concern. See *New York* v. *Ferber*, 458 U. S. 747, 767 (1982) ("[A] person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court.").

and not includable [in the recipient's income]. Successive [federal] statutory enactments beginning in 1942 allowed a deduction and corresponding inclusion for alimony payments while continuing the nondeductible-excludable treatment for child support payments." H. Ault, Comparative Income Taxation: A Structural Analysis 277 (1997).

Accepting, *arguendo*, the Court's "personal expense deduction" in lieu of "income attribution" categorization of alimony, however, I do not read our precedent to lead in the direction the Court takes. On Lunding's analysis, which the Court essentially embraces, the core principle is that "personal deductions, no matter what they are . . . must be allowed in the proportion that the New York State income bears to total income." Tr. of Oral Arg. 19. That has never been, nor should it be, what the Privileges and Immunities Clause teaches.

### A

"[E]arly in this century, the Court enunciated the principle that a State may limit a nonresident's expenses, losses, and other deductions to those incurred in connection with the production of income within the taxing State." 2 J. Hellerstein & W. Hellerstein, State Taxation 20–47 (1992). In two companion cases—*Shaffer* v. *Carter*, 252 U. S. 37 (1920), and *Travis* v. *Yale & Towne Mfg. Co.*, 252 U. S. 60 (1920)— the Court considered, respectively, Oklahoma's and New York's schemes of nonresident income taxation. Both had been challenged as violating the Privileges and Immunities Clause.

Upholding the Oklahoma scheme and declaring the New York scheme impermissibly discriminatory, the Court established at least three principles. First, "just as a State may impose general income taxes upon its own citizens and residents whose persons are subject to its control, it may, as a necessary consequence, levy a duty of like character, and not more onerous in its effect, upon incomes accruing to nonresidents from their property or business within the State,

or their occupations carried on therein." *Shaffer*, 252 U. S., at 52; accord, *Travis*, 252 U. S., at 75.

Second, a State may not deny nonresidents personal *exemptions* when such exemptions are uniformly afforded to residents. See *id.*, at 79–81. Personal exemptions, which are typically granted in a set amount "to all taxpayers, regardless of their income," Hellerstein, Some Reflections on the State Taxation of a Nonresident's Personal Income, 72 Mich. L. Rev. 1309, 1343 (1974) (hereinafter Hellerstein), effectively create a zero tax bracket for the amount of the exemption. See Chirelstein, p. 3. Denial of those exemptions thus amounts to an across-the-board rate increase for nonresidents, a practice impermissible under longstanding constitutional interpretation. See, *e. g., Chalker* v. *Birmingham & Northwestern R. Co.,* 249 U. S. 522, 526–527 (1919); *Ward* v. *Maryland,* 12 Wall. 418, 430 (1871); see also *Austin* v. *New Hampshire,* 420 U. S., at 659 (Privileges and Immunities Clause violated where, "[i]n effect, . . . the State taxe[d] only the incomes of nonresidents working in New Hampshire"). Because New York denied nonresidents the personal exemption provided to all residents, the *Travis* Court held the State's scheme an abridgment of the Privileges and Immunities Clause. 252 U. S., at 79–81.

Finally, *deductions* for specific expenses are treated differently from the blanket exemptions at issue in *Travis:* A State need not afford nonresidents the same deductions it extends to its residents. In *Shaffer,* the Court upheld Oklahoma's rules governing deduction of business losses. Oklahoma residents could deduct such losses wherever incurred, while nonresidents could deduct only losses incurred within the State. The Court explained that the disparate treatment was "only such as arises naturally from the extent of the jurisdiction of the State in the two classes of cases, and cannot be regarded as an unfriendly or unreasonable discrimination." 252 U. S., at 57. A State may tax its residents on "their income from all sources, whether within or without

the State," but it cannot tax nonresidents on their out-of-state activities. *Ibid.* "Hence there is no obligation to accord to [nonresidents] a deduction by reason of losses elsewhere incurred." *Ibid.* The Court stated the principle even more clearly in *Travis*, 252 U. S., at 75–76: "[T]here is no unconstitutional discrimination against citizens of other States in confining the deduction of expenses, losses, etc., in the case of non-resident taxpayers, to such as are connected with income arising from sources within the taxing State . . . ."

## B

*Shaffer* and *Travis* plainly establish that States need not allow nonresidents to deduct out-of-state *business* expenses. The application of those cases to deductions for *personal* expenses, however, is less clear. On the one hand, *Travis'* broad language could be read to suggest that in-state business expenses are the only deductions States must extend to nonresidents. On the other hand, neither *Shaffer* nor *Travis* upheld a scheme denying nonresidents deductions for personal expenses.[5] A leading commentator has concluded that "nothing in either the *Shaffer* or *Travis* opinions indicates whether the Court was addressing itself to personal as well as business deductions." Hellerstein 1347, n. 165.

---

[5] The New York law before the Court in *Travis* allowed residents to deduct non-business-related property losses wherever incurred, but allowed nonresidents such deductions only for losses incurred in New York. See Tr. of Record in *Travis v. Yale & Towne Mfg. Co.*, O. T. 1919, No. 548 (State of New York, The A, B, C of the Personal Income Tax Law, pp. 12, 14, ¶¶ 42, 44). Although *Travis* held New York's law infirm, the Court rested its decision solely on the ground that denying personal exemptions to nonresidents violated the Privileges and Immunities Clause. See *Travis*, 252 U. S., at 79–82. The Court did not extend its ruling to New York's differential treatment of residents and nonresidents with regard to personal-loss deductions. See *id.*, at 75–76 ("no unconstitutional discrimination" in confining deductions for nonresidents' losses "to such as are connected with income arising from sources within the taxing State").

With rare exception, however, lower courts have applied *Shaffer* and *Travis* with equal force to both personal and business deductions. The New York court's decision in *Goodwin* v. *State Tax Comm'n*, 286 App. Div. 694, 702, 146 N. Y. S. 2d 172, 180 (3d Dept. 1955), aff'd mem., 1 N. Y. 2d 680, 133 N. E. 2d 711, appeal dism'd for want of a substantial federal question, 352 U. S. 805 (1956), exemplifies this approach. *Goodwin* concerned a lawyer who resided in New Jersey and practiced law in New York City. In his New York income tax return, he claimed and was allowed deductions for bar association dues, subscriptions to legal periodicals, entertainment and car expenses, and certain charitable contributions. But he was disallowed deductions for real estate taxes and mortgage interest on his New Jersey home, medical expenses, and life insurance premiums. *Goodwin*, 286 App. Div., at 695, 146 N. Y. S. 2d, at 174. Upholding the disallowances, the appeals court explained that the non-income-producing personal expenses at issue were of a kind properly referred to the law and policy of the State of the taxpayer's residence. That State, if it had an income tax, might well have allowed the deductions, but the New York court did not think judgment in the matter should be shouldered by a sister State. *Id.*, at 701, 146 N. Y. S. 2d, at 180.

*Goodwin* further reasoned that a State may accord certain deductions "[i]n the exercise of its general governmental power to advance the welfare of its residents." *Ibid.* But it does not inevitably follow that the State must "extend similar aid or encouragement to the residents of other states." *Ibid.* A State need not, in short, underwrite the social policy of the Nation. Cf. *Martinez* v. *Bynum*, 461 U. S. 321, 328 (1983) (State may provide free primary and secondary education to residents without extending the same benefit to nonresidents).

Other lower courts, upholding a variety of personal expense deductions for residents only, have agreed with *Goodwin*'s analysis. Challenges to such rulings, like the appeal

in *Goodwin*, have been disposed of summarily by this Court. See, *e. g.*, *Lung* v. *O'Chesky*, 94 N. M. 802, 617 P. 2d 1317 (1980) (upholding denial to nonresidents of grocery and medical tax rebates allowed residents where rebates served as relief for State's gross receipts and property taxes), appeal dism'd for want of a substantial federal question, 450 U. S. 961 (1981); *Anderson* v. *Tiemann*, 182 Neb. 393, 407–408, 155 N. W. 2d 322, 331–332 (1967) (upholding denial to nonresidents of a deduction allowed residents for sales taxes paid on food purchased for personal use), appeal dism'd for want of a substantial federal question, 390 U. S. 714 (1968); *Berry* v. *State Tax Comm'n*, 241 Ore. 580, 582, 397 P. 2d 780, 782 (1964) (upholding denial to nonresidents of deductions allowed residents for medical expenses, interest on home-state loans, and other personal items; court stated that the legislature could legitimately conclude that "personal deductions are so closely related to the state of residence that they should be allowed only by the state of residence and not by every other state in which some part of a taxpayer's income might be found and taxed"), appeal dism'd for want of a substantial federal question, 382 U. S. 16 (1965). But see *Wood* v. *Department of Revenue*, 305 Ore. 23, 32–33, 749 P. 2d 1169, 1173–1174 (1988) (State may not deny alimony deduction to nonresidents).

### C

*Goodwin*'s Privileges and Immunities Clause analysis is a persuasive elaboration of *Shaffer* and *Travis*. Whether *Goodwin*'s exposition is read broadly (as supporting the view that a State need not accord nonresidents deductions for any personal expenses) or more precisely (as holding that a State may deny nonresidents deductions for personal expenditures that are "intimately connected with the state of [the taxpayer's] residence," *Goodwin*, 286 App. Div., at 701, 146 N. Y. S. 2d, at 180), Christopher Lunding is not entitled to the relief he seeks.

Alimony payments (if properly treated as an expense at all) are a personal expense, as the Court acknowledges, see *ante*, at 310–311. They "ste[m] entirely from the marital relationship," *United States* v. *Gilmore*, 372 U. S. 39, 51 (1963), and, like other incidents of marital and family life, are principally connected to the State of residence. Unlike donations to New York-based charities or mortgage and tax payments for second homes in the State, Lunding's alimony payments cannot be said to take place in New York, nor do they inure to New York's benefit. They are payments particularly personal in character, made by one Connecticut resident to another Connecticut resident pursuant to a decree issued by a Connecticut state court. Those payments "must be deemed to take place in" Connecticut, "the state of [Lunding's] residence, the state in which his life is centered." *Goodwin*, 286 App. Div., at 701, 146 N. Y. S. 2d, at 180. New York is not constitutionally compelled to subsidize them.

The majority is therefore wrong to fault the Court of Appeals for insufficient articulation of a "policy basis for § 631(b)(6)." *Ante*, at 304. The Court of Appeals recalled *Goodwin*, characterizing it as the decision that "definitively addressed" the disallowance of personal life expenses. See 89 N. Y. 2d 283, 289, 675 N. E. 2d 816, 820 (1996). The court concluded that alimony payments were no less referable to the law and policy of the taxpayer's residence than "the expenditures for life insurance, out-of-State property taxes and medical treatment at issue in *Goodwin*." *Id.*, at 291, 675 N. E. 2d, at 821. That policy-based justification for § 631(b)(6) needed no further elaboration.

### III

Although Lunding's alimony payments to a Connecticut resident surely do not facilitate his production of income in New York or contribute to New York's riches, the Court relies on this connection: "[A]s a personal obligation that generally correlates with a taxpayer's total income or wealth, ali-

mony bears some relationship to earnings regardless of their source." *Ante,* at 314; see also *ante,* at 310 (alimony payments "arguably bear some relationship to a taxpayer's overall earnings," and are "determined in large measure by an individual's income generally, wherever it is earned"). But all manner of spending similarly relates to an individual's income from all sources. Income generated anywhere will determine, for example, the quality of home one can afford and the character of medical care one can purchase. Under a "correlat[ion] with a taxpayer's total income" approach, *ante,* at 314, it appears, the nonresident must be allowed to deduct his medical expenses and home state real estate taxes, even school district taxes, plus mortgage interest payments, if the State allows residents to deduct such expenses. And as total income also determines eligibility for tax relief aimed at low-income taxpayers, notably earned income tax credits, a State would be required to make such credits available to nonresidents if it grants them to residents.[6]

The Court does not suggest that alimony correlates with a taxpayer's total income more closely than does the run of personal life expenses. Indeed, alimony may be more significantly influenced by other considerations, for example, the length of the marriage, the recipient's earnings, child custody and support arrangements, an antenuptial agreement.[7] In

---

[6] New York currently allows low-income nonresident taxpayers to use the State's Earned Income Tax Credit to offset their income tax liability, but does not refund any excess credits to nonresidents as it does to residents. N. Y. Tax Law §§ 606(d)(1)–(d)(2) (McKinney Supp. 1997); see also §§ 606(c)(1)–(c)(2) (residents entitled to a refund of excess credit for certain household and dependent care services; nonresidents may use the credit only to offset tax liability).

[7] Connecticut, where Lunding was divorced, lists as factors relevant to alimony determinations

"the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties . . . and, in the case of a parent to whom the

short, the Court's "related-to-income" approach directly leads to what Christopher Lunding candidly argued: Any and every personal deduction allowed to residents must be allowed to nonresidents in the proportion that New York income bears to the taxpayer's total income. See Tr. of Oral Arg. 19–20. If that is the law of this case, long-settled provisions and decisions have been overturned, see *supra,* at 324–325, beyond the capacity of any legislature to repair. The Court's "notions of fairness," *ante,* at 315, in my judgment, do not justify today's extraordinary resort to a Privileges and Immunities Clause "the contours of which have [not] been precisely shaped by the process and wear of constant litigation and judicial interpretation." *Baldwin* v. *Fish and Game Comm'n of Mont.,* 436 U. S., at 379.

\*     \*     \*

For the reasons stated, I do not agree that the Privileges and Immunities Clause of Article IV, § 2, mandates the result Lunding seeks—the insulation of his 1990 alimony payments from any State's tax. Accordingly, I would affirm the judgment of the New York Court of Appeals, and I dissent from this Court's judgment.

---

custody of minor children has been awarded, the desirability of such parent's securing employment." Conn. Gen. Stat. § 46b–82 (1995).